UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IGNACIO VANHORN,

       Petitioner,

    v.

CARMEN D. PALMER,

       Respondent.

_____/

CASE NO. 2:09-CV-10492
JUDGE STEPHEN J. MURPHY, III
MAGISTRATE JUDGE PAUL J. KOMIVES

## REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
      A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
      B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      C.   *Procedural Default and Statute of Limitations* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      D.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
      E.   *Plea Validity (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
           1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
           2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
      F.   *Mental Competency (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
           1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
           2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
      G.   *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

\*     \*     \*     \*     \*

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.    REPORT:

A.     *Procedural History*

      1.     Petitioner Ignacio VanHorn is a state prisoner, currently confined at the Michigan Reformatory in Ionia, Michigan.

2.     On October 19, 2004, petitioner was convicted of one count of third-degree criminal

sexual conduct, MICH. COMP. LAWS § 750.520d(1)(a), pursuant to his no contest plea in the Midland

County Circuit Court.   On December 10, 2004, he was sentenced to a term of 2½-15 years'

imprisonment.

3.     Petitioner did not seek leave to appeal in the Michigan Court of Appeals, nor did he

request appointment of appellate counsel.  Consistent with state practice at the time, petitioner was

not advised that he had a right to the appointment of appellate counsel.  On June 23, 2005, the

Supreme Court issued its decision in *Halbert v. Michigan*, 545 U.S. 605 (2005), holding that "the

Due Process and Equal Protection Clauses require the appointment of counsel for defendants,

convicted on their pleas, who seek access to first-tier review in the Michigan Court of Appeals."

*Id.* at 610.  Petitioner thereafter sought appointment of appellate counsel, and on December 13,

2005, the trial court appointed Gary Kohut as petitioner's appellate counsel.  In a letter dated

December 27, 2005, Mr. Kohut informed the Court that he could not accept the appointment.  The

trial court subsequently appointed Matthew Posner on January 3, 2006.

4.     Because more than six months had elapsed since sentencing, petitioner was barred

from filing a motion to withdraw his plea.  *See* MICH. CT. R. 6.310(C).  Therefore, on October 12,

2006, petitioner filed through counsel a motion for relief from judgment pursuant to MICH. CT. R.

6.500-.508, raising the following claims:

I.     THE RECORD OF MR. VANHORN'S *NOLO CONTENDERE* PLEA
FAILS TO ESTABLISH THAT IT WAS KNOWING, VOLUNTARY OR
ACCURATE AS REQUIRED [BY] MCR 6.302 AND BY DUE PROCESS
BECAUSE MR. VANHORN DID NOT VALIDLY SWEAR TO TELL THE
TRUTH, BECAUSE THE TRIAL COURT FAILED TO DEVELOP ANY
RECORD WHY A *NOLO CONTENDERE* PLEA WAS NECESSARY AND
BECAUSE MR. VANHORN MADE REPEATED STATEMENTS THAT
UNDERMINED THE VALIDITY AS TO THE PLEA PROCEEDING.

2

II.    DUE PROCESS DEMANDS A *NUNC PRO TUNC* COMPETENCY EVALUATION BECAUSE MR. VANHORN'S BEHAVIOR AND STATEMENTS BEFORE AND DURING HIS PLEA RAISE A *BONA FIDE* QUESTION WHETHER HE WAS COMPETENT WHEN HE PLEAD[ED] GUILTY; IF HE IS FOUND INCOMPETENT, HIS PLEA MUST BE VACATED.

III.   MR. VANHORN IS ENTITLED BY DUE PROCESS TO AN ADDITIONAL SEVEN DAYS JAIL CREDIT.

IV.    MR. VANHORN DOES NOT HAVE TO SHOW GOOD CAUSE BECAUSE IT WAS IMPOSSIBLE TO RAISE THE INSTANT ISSUE IN THE COURT OF APPEALS OR IN A TIMELY MOTION TO SET ASIDE HIS PLEA BECAUSE APPELLATE COUNSEL WAS APPOINTED AFTER THE TIME FROM DOING SO HAD EXPIRED.

At a hearing on the motion, the trial court denied the motion on the merits, with the exception of petitioner's jail credit claim.  *See* Mot. Hr'g Tr., dated 11/22/06, at 15-20.  The court explicitly agreed with counsel that, because of the unique procedural history of the case, petitioner was not bound by the procedural default rule in MICH. CT. R. 6.508(D)(3).  *See* Mot. Hr'g Tr., at 3.

5.    Petitioner, proceeding *pro se*, sought leave to appeal the three issues on which he did not succeed in the trial court to both the Michigan Court of Appeals and Michigan Supreme Court. Both courts denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "fail[ure] to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *See People v. Vanhorn*, 480 Mich. 924, 740 N.W.2d 276 (2007); *People v. Vanhorn*, No. 276637 (Mich. Ct. App. June 21, 2007).

6.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on February 10, 2009.  As grounds for the writ of habeas corpus, he raises the three unsuccessful claims that he raised in his motion for relief from judgment.

7.    Respondent filed an answer on May 18, 2009.  Respondent contends that petitioner's

3

claims are barred by the statute of limitations and by petitioner's procedural default in the state courts.

       8.     Petitioner filed a reply to respondent's answer on July 2, 2009, and an amended reply on August 12, 2009.

B.    *Factual Background Underlying Petitioner's Conviction*

       Petitioner was originally bound over on two counts of first-degree criminal sexual conduct (CSC-I), arising from the sexual assault of 14-year-old Jennifer Lalone in December 2002. In a separate case, petitioner was bound over on two additional counts of CSC-I arising from the sexual assault of his sister. At a joint preliminary examination, Lalone and petitioner's sister testified regarding the sexual assaults. Prior to trial, the prosecution offered to allow petitioner to plead guilty to one count of third-degree criminal sexual conduct (CSC-III) in each case, in exchange for dismissal of the CSC-I counts. Petitioner rejected this offer. *See* Plea Tr., dated 5/27/04. Trial commenced on the case involving Jennifer Lalone on October 18, 2004. Following the selection of the jury and opening statements, Ms. Lalone testified. Her testimony is accurately summarized in respondent's answer:

> At Petitioner's jury trial, the victim, Jennifer Lalone, testified that she was 14 years of age in December 2002 (TR, October 18, 2004, p. 138). Lalone said that she dated Petitioner, who was 17 years of age at the time, for a few weeks, beginning in June 2002 (TR, October 18, 2004, p. 140). Lalone further testified that she had consensual sexual intercourse with Petitioner on a few occasions while they were dating in the summer of 2002 (TR, October 18, 2004, p. 142).
>
> Lalone moved-in with Petitioner's family in October 2002, after she had been kicked-out of her own house (TR, October 18, 2004, p. 140). Although she had long stopped dating Petitioner, Lalone was friends with Petitioner's sisters, Kris and Kendra Ososki, and their family allowed Lalone to move-in with them for a few months (TR, October 18, 2004, p. 141). Petitioner was not living with his family at the time that Lalone moved-in with them, but he moved back sometime after Thanksgiving, 2002 (TR, October 18, 2004, p. 143). About a week after Petitioner's return, he began forcing Lalone to have sexual intercourse with him (TR, October 18,

4

2004, p. 144). Specifically, Lalone testified that on one particular occasion –
Christmas Day, 2002 – Petitioner forced her to have sexual intercourse with him in
an outside shed located on Petitioner's family's property (TR, October 18, 2004, pp.
146-147). Lalone moved-out of Petitioner's family's home in early January 2003
(TR, October 18, 2004, p. 147). Lalone subsequently told law enforcement in July
2003 about the sexual abuse that she had suffered at Petitioner's hands (TR, October
18, 2004, p. 149).

Answer, at 2-3. The court adjourned for the day after petitioner's sister was called to the stand and

refused to testify.

The following day, the parties informed the court that they had reached a plea agreement.

Pursuant to the agreement, petitioner would plead guilty to one count of CSC-III in exchange for

dismissal of the two CSC-I counts involving Ms. Lalone and dismissal of the two CSC-I counts in

the separate case involving petitioner's sister. The parties also agreed that petitioner's minimum

sentence would be 30 months. *See* Plea Tr., dated 10/19/04, at 3. The trial judge asked to have

petitioner sworn, and the clerk swore-in petitioner. *See id*. After administration of the oath, the

following exchange occurred:

| | |
|---|---|
| THE DEFENDANT: | Yeah. It's not under oath. |
| THE COURT: | Sorry? |
| THE DEFENDANT: | Nothing. |
| THE COURT: | Mr. VanHorn, you don't leave that on our record unless you're willing to explain what you mean. |
| THE DEFENDANT: | I have to plead or I'm going to get longer. |
| THE COURT: | No, you don't have to.  The jury will be back here in about half an hour. |
| THE DEFENDANT: | And they're going to find me innocent; correct, and it will all go away. |
| THE COURT: | I didn't suggest that. What they're going to do is make their best effort to work with the factual information and reach a conclusion. |
| (Short pause taken) | |
| THE COURT: | And there are no guarantees. They could acquit you or they could find you responsible for the offense as you are charged.  And I'm sure you had an opportunity to give a careful consideration to what the ranges of consequences are that |

might follow from the decisions that they might make.

> You are not being asked to do anything. You are most certainly not being asked to lie.

> You've heard a description of the arrangements that you're being offered by the prosecutor.

> As a matter of your own free will, you can accept those. As a matter of your own free will, you can reject them but live with the conclusions that the jury reaches on their basis, on the basis of their examination of the evidence.

> It is your choice, sir.

> There's no one in this room who has any particular stake in the decision that you reach. We can try this case to a conclusion with the jury if that is your desire.

> Do you have any additional questions of me?

THE DEFENDANT:    I just want to go home.

THE COURT:         You have to make a decision.

THE DEFENDANT:    Yeah. Guilty. Sure. Just give me the plea, please.

*Id*. at 4-6.

The prosecutor then requested a side bar, and after the off-the-record discussion defense counsel conferred with petitioner. After conferring with counsel, petitioner indicated that it was his wish to accept the plea bargain offered by the prosecutor. *See id*. The judge asked the clerk to swear-in petitioner, and the clerk informed the judge that petitioner had already been sworn. *See id*. at 7. In response to questioning from the court, petitioner indicated that he was satisfied with the representation of his counsel during the course of the proceedings. *See id*. Petitioner indicated that he understood the terms of the plea bargain. The court informed petitioner of the rights he was waiving by entering his plea, and petitioner indicated that he understood those rights and that he was waiving them by pleading *nolo contendere*. *See id*. at 8-9. Petitioner then pleaded no contest to one count of CSC-III. *See id*. at 9. Petitioner indicated that he understood the plea and that it was freely and voluntarily given. *See id*. at 9-10. Petitioner also denied that he had taken any medications or drugs that affected his ability to use good judgment, or that anyone had offered him anything to

induce his plea beyond the plea bargain. *See id.* at 10. Relying on the preliminary examination testimony and the victim's testimony on the first day of trial to establish a factual basis for the plea, the court accepted petitioner's plea of *nolo contendere*. *See id.* at 10-11.

C.      *Procedural Default and Statute of Limitations*

Respondent first contends that petitioner's claims are barred by petitioner's procedural default in the state courts, because petitioner failed to raise these claims on direct appeal, and that petitioner's claims are barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d). The Court should decline to rule on the petition on these bases, and should instead consider the merits of petitioner's claims.

The procedural default question in this case is complex. Respondent contends that petitioner's claims are defaulted because the Michigan appellate courts denied petitioner's applications for leave to appeal based on petitioner's "failure to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." At the outset, this alone presents a difficult question given the conflicting decisions the Sixth Circuit has issued regarding the sufficiency of this language to establish a procedural default, particularly where, as here, the trial court rejected petitioner's claims on the merits. *Compare Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000) (language alone sufficient to constitute invocation of procedural bar), *with Abela v. Martin*, 380 F.3d 915, 923-24 (6th Cir. 2004) (language insufficient where lower court opinion rejected claims on the merits). Further, given the procedural posture of this case, it is questionable whether petitioner was even bound by the procedural default rule set forth in Rule 6.508(D)(3). Petitioner filed a motion for relief from judgment because he had been denied his right, recognized in *Halbert*, to counsel on his first-tier appeal from his guilty plea. Applying the procedural default rule and treating the motion

7

as an ordinary Rule 6.508(D) motion would seem to eviscerate the right granted petitioner in *Halbert*. Respondent contends that petitioner still could have filed an application for leave to appeal after the appointment of counsel, citing to *People v. Thomas*, 480 Mich. 1158, 746 N.W.2d 621 (2008) and *People v. Hill*, 761 N.W.2d 101 (2009), both of which stated that where a defendant's conviction was not final when *Halbert* was decided, a defendant's period for filing a late appeal restarts on the date that he is appointed counsel. Those cases, however, were not available to counsel in early 2006, and at that time the Michigan authorities pointed to the course of action taken by appointed counsel. Under an amendment to Rule 6.310(C) which became effective on January 1, 2006, petitioner had only sixth months from the date of sentencing in which to file a motion to withdraw the plea. *See* MICH. CT. R. 6.310(C) ("The defendant may file a motion to withdraw the plea within 6 months after sentence. Thereafter, the defendant may seek relief only in accordance with the procedure set forth in subchapter 6.500.").[1] Although this rule governs the timing of filing a motion to withdraw rather than an appeal, the rule goes on to provide that a defendant may not challenge the voluntariness of his plea without first seeking to withdraw the plea in the trial court. *See* MICH. CT. R. 6.310(D). Thus, regardless of the appellate time rules, the plea withdrawal rules forced petitioner to proceed by way of a motion for relief from judgment.

Fortunately, the Court need not untangle the Sixth Circuit's conflicting decisions regarding the "burden of establishing entitlement to relief" language nor resolve the difficult and novel questions of state law implicated by the Supreme Court's *Halbert* decision and the Michigan rules

---

[1]In an adminstrative order, the Michigan Supreme Court clarified that, where an order appointing counsel was entered prior to the January 1, 2006, effective date of the amendment to Rule 6.310(C), a defendant had one year from the date of sentencing to file a motion to withdraw his plea, in accordance with the prior version of Rule 6.310(C). *See People v. Podlaszuk*, 480 Mich. 866, 737 N.W.2d 764 (2007) (discussing Administrative Order 2005-02). Because petitioner was not appointed counsel until January 3, 2006, this administrative order was inapplicable.

governing plea withdrawal. While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Thus, while the procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also*, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995). In light of the difficult questions discussed above, the procedural default analysis is significantly more complicated than the analysis of petitioner's substantive claims for relief. Because, as explained below, those claims are without merit, the Court should deny the petition on that basis rather than on the basis of an purported procedural default.

Likewise, respondent's statute of limitations argument is complicated by the procedural posture of this case. In the first place, in light of *Halbert* and the appointment of counsel for petitioner based on that decision, it is difficult to determine from the outset the appropriate date upon which petitioner's conviction became "final," and thus the limitations period commenced, under § 2244(d)(1)(A). Further, it is a complex question whether petitioner is entitled to equitable tolling for any period based on the late appointment of counsel under *Halbert*, or to equitable tolling based on his alleged mental incompetence, an issue which is intertwined with the merits of one of petitioner's claims. As with the procedural default doctrine, the statute of limitations is not jurisdictional. *See Smith v. State of Ohio Dept. of Rehabilitation,* 463 F. 3d 426, 429 n. 2 (6th Cir.

2006).  Thus, the Court need not resolve the dispute over the timeliness of petitioner habeas application because assuming without deciding that the current petition was timely, petitioner's habeas application fails on the merits. *See Ahart v. Bradshaw,* 122 Fed. Appx. 188, 192 (6th Cir. 2005).

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

10

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts

11

them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.      *Plea Validity (Claim I)*

        In his first claim, petitioner challenges the validity of his *nolo contendere* plea.  He contends that the record of the plea fails to establish that it was knowing and voluntary because: (1) he did not validly swear to tell the truth; (2) the trial court failed to develop a record regarding the necessity of a *nolo contendere* plea; and (3) he made inconsistent statements that undermined the validity of the plea proceeding.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

        1.      *Clearly Established Law*

        A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the totality of the circumstances.  *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).  The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea.  *See Brady*, 397 U.S. at 755; *King*, 17 F.3d at 153.  A solemn declaration of guilt by the defendant carries a presumption of truthfulness. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."

12

*Blackledge*, 431 U.S. at 74.  Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]"  *Mabry v. Johnson*, 467 U.S. 504, 511 (1984).  Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.  It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence--because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.

*Id*. at 508 (footnotes omitted).

2.      *Analysis*

At the outset, petitioner's various challenges to his plea raise a number of contentions that the trial court failed to follow the Michigan Court Rules governing plea proceedings, in particular Rule 6.302(A) (requiring the giving of an oath before a plea is accepted) and Rule 6.302(D)(2)(a) (requiring that a court state why a *nolo contendere* plea is appropriate).  It is well established that habeas corpus relief is available only to correct errors of federal constitutional law.  Habeas relief does not lie for a state court's errors in applying state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Thus, so long as petitioner's plea was voluntary and intelligent under the federal constitutional standards governing the validity of pleas, the state court's alleged failure to comply with the state court rule governing the taking of pleas does not provide a basis for habeas relief.  *See Russ v. Hofbauer*, No. 05-CV-72235, 2007 WL 541917, at *4 (E.D. Mich. Feb. 16, 2007) (Battani, J.); *Bair v. Phillips*, 106 F. Supp. 2d 934, 943 (E.D. Mich. 2000) (Duggan, J.).

Petitioner first contends that his plea was invalid because he was not properly placed under oath.  This claim fails as both a factual and legal matter.  Petitioner was, in fact, administered an oath, and petitioner swore to tell the truth.  *See* Plea Tr., dated 10/19/04, at 3.  It is true that

13

petitioner immediately attempted to disavow his oath, but the trial judge informed him that he could not do so and continue with his plea.  After the court extensively explained to petitioner his rights, and petitioner conferred with counsel, petitioner continued with the plea proceeding.  *See id*. at 4-6. Petitioner's continuation of the plea proceeding after having been given the oath and after the court having explained that petitioner would have to proceed under oath amounted to a withdrawal of his earlier attempt to repudiate his oath.  Thus, as a factual matter, petitioner remained under oath. Further, as a legal matter, even if petitioner were not properly placed under oath, there is no federal constitutional requirement that an oath be administered prior to entry of a guilty plea.  *See Phillips v. Murphy*, 796 F.2d 1303, 1307 (10th Cir. 1986); *cf*. Fed. R. Crim. P. 11(b)(1) (emphasis added) (stating that before the court accepts a guilty plea, "the defendant *may* be placed under oath").

Petitioner also contends that his plea was invalid because the court failed to state why a plea of *nolo contendere* was appropriate.  Again, however, petitioner cannot show that this failure amounted to a constitutional violation.  While the Michigan Court Rules, as do the Federal Rules of Criminal Procedure, require a court to state the reasons why a plea of *nolo contendere* is appropriate, *see* Mich. Ct. R. 6.301(D)(2)(a); Fed. R. Crim. P. 11(a)(3), neither the Due Process Clause nor any other provision of the Constitution require a court to state the reasons supporting a *nolo contendere* plea.

Finally, petitioner contends that his statements at the plea hearing undermine the validity of his plea.  Specifically, petitioner contends that the record shows that he was confused, that he did not establish a factual basis for his plea, and was unwilling to admit guilt.  However, the record fails to show that petitioner's plea was unknowing or involuntary.  "The requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement

14

of the Constitution[.]" *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995). Because the writ of habeas corpus exists only to correct errors of federal law, therefore, a state court's failure to elicit a factual basis for a guilty plea does not state a claim cognizable on habeas review. *See United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (en banc); *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Coddington v. Langley*, 202 F. Supp. 2d 687, 702 (E.D. Mich. 2002) (Tarnow, J.). This is particularly true with respect to a plea of *nolo contendere*:

> Although the legal effect of a nolo plea and a guilty plea are identical, it does not follow that the procedural requirements for accepting the two pleas are the same. Indeed, the purpose of the plea of nolo contendere, to allow a defendant to enter a plea without admitting guilt, is wholly inconsistent with the reason for requiring a factual basis for a guilty plea. The validity of a guilty plea is premised on the voluntariness and understanding of the plea. Although someone entering a plea of nolo contendere should, of course, intelligently enter the plea, public interest in assuring that a factual basis exists for the plea is not as great since the defendant is not admitting guilt by entering a nolo plea.

*Gloria v. Miller*, 658 F. Supp. 229, 234 (W.D. Okla. 1987). In any event, the victim's testimony at the preliminary examination and at trial was more than sufficient to establish a factual basis for the plea.

Nor was petitioner's plea involuntary because he did not himself establish a factual basis and was unwilling to admit guilt. Again, this is in the very nature of a *nolo contendere* plea. In *North Carolina v. Alford*, 400 U.S. 25 (1970), the Court held that a criminal defendant may constitutionally enter a guilty plea even while protesting his innocence or declining to admit his commission of the crime. *See id.* at 37-38. The Court explained that "[i]mplicit in the nolo contendere cases is a recognition that the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive

his trial and accept the sentence." *Id.* at 36.   Thus, "[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Id.* at 37. Petitioner's indications to the trial court that he was pleading guilty only to avoid a potentially longer prison term likewise does not establish that the plea was involuntary.   As the Supreme Court has explained, a guilty plea is not "compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." *Brady*, 397 U.S. at 751.

In short, the record establishes that the trial court extensively explained to petitioner the possibilities facing him if he went to trial and that the decision to plead guilty was solely his to make.   While the record shows that petitioner obviously had some trouble coming to terms with the tough choices facing him, the record also shows that he ultimately desired to enter a plea of guilty on one count of CSC-III, carrying a maximum penalty of 15 years' imprisonment, rather than face the possibility of conviction on four CSC-I counts, each carrying a potential penalty of life imprisonment.   The record thus establishes that petitioner's plea was knowing and voluntary, and the Court should therefore conclude that petitioner is not entitled to habeas relief on this claim.

F.     *Mental Competency (Claim II)*

In his second claim, petitioner contends that the trial court should have *sua sponte* conducted a hearing to determine his competency to stand trial and to enter a guilty plea.   In support of his claim, petitioner points to: (1) pre-plea evaluations indicating that petitioner had difficulty in concentration and appeared confused about the situation in which he found himself; (2) his

16

statements at the plea hearing; and (3) a post-plea incident in jail in which petitioner was discovered in his cell wrapped in toilet paper with his underwear on his head, and later appeared to have feces on his head.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

      1.     *Clearly Established Law*

Due process requires that, for a plea to be valid, it must be entered by a defendant who is competent to enter the plea.  A defendant is competent to stand trial and to enter a plea if he "has 'sufficient present ability to consult with his lawyer with a reasonable degree of rationale understanding,' and has 'a rational as well as factual understanding of the proceedings against him.'" *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Dusky v. United States*, 326 U.S. 402, 402 (1960) (per curiam)).  When there is reasonable cause to believe that the defendant is incompetent, the court must inquire into defendant's competency before accepting a plea of guilty.  *See Drope v. Missouri*, 420 U.S. 162, 173 (1975); *Pate v. Robinson*, 383 U.S. 375, 385-86 (1966).  A hearing must be held where a reasonable judge, faced with the facts before the trial judge, would have a "bona fide doubt" about the defendant's competency.  *Warren v. Lewis*, 365 F.3d 529, 533 (6th Cir. 2004).  The focus of the inquiry is "on what the trial court did in light of what it knew at the time of the trial or plea hearing." *Tiller v. Esposito*, 911 F.2d 575, 576 (11th Cir. 1990).  Factors giving rise to a bona fide doubt may include prior medical opinions on his competence to stand trial or plead guilty, his demeanor in court, and his irrational behavior.  *See Drope*, 420 U.S. at 180.

      2.     *Analysis*

At the outset, petitioner's post-plea behavior does not give rise to a bona fide doubt at the time he entered his plea.  As noted above, the propriety of a trial court's failure to hold a competency hearing *sua sponte* is evaluated in light of the information before the judge at the time of the plea.

17

*See Tiller*, 911 F.2d at 576; *see also*, *Payton v. Hubbard*, 195 Fed. Appx. 584, 585 (9th Cir. 2006). As this conduct occurred after the plea, it obviously was not before the judge at the time of the plea. Further, petitioner's bizarre behavior while incarcerated does not necessarily show that petitioner was unable, at the time of his plea, to understand the proceedings and assist counsel. It may equally be indicative of a reaction to the circumstances in which petitioner then found himself.

Likewise, the pre-plea evaluations do not give rise to a bona fide doubt regarding his competence. In the first place, "[t]here is no indication in that the Judge was even aware of any of these reports, and therefore no indication of how these reports could be the basis for a *sua sponte* order." *Williams v. Coughlin*, 664 F. Supp. 665, 667 (E.D.N.Y. 1987); *see also*, *Payton*, 195 Fed. Appx. at 585. Further, even if the judge were aware of the reports, they do not raise a bona fide doubt regarding petitioner's competence to enter a guilty plea. Petitioner does not contend that any of the evaluators determined that he was incompetent to stand trial. Rather, as set forth by petitioner, the reports indicated only that petitioner possibly may have had some learning disabilities and some difficulties in concentration and understanding. Such reports fall far short of raising a bona fide doubt that petitioner was competent to stand trial. *See Davis v. Keane*, 45 Fed. Appx. 31, 32 (2d Cir. 2002).

Finally, petitioner's behavior during the proceedings did not raise a bona fide doubt regarding his competence. First, "no person present at the . . . plea proceeding–not the trial judge, not the prosecutor, and not [petitioner's] counsel–indicated that [petitioner's] competence should be doubted." *Weisberg v. Minnesota*, 29 F.3d 1271, 1276 (8th Cir. 1994); *see also*, *Williams*, 664 F. Supp. at 668. Petitioner does not cite, and my review of the record has failed to uncover, any evidence of bizarre or irrational behavior during the course of the proceedings leading up to

18

petitioner's plea.  To be sure, there were times when petitioner needed to have explained to him the proceedings and the choices facing him, but this merely shows that petitioner was a layman, not an attorney.  The record also shows that petitioner had a difficult time coming to terms with the choices facing him, but again this is a not uncommon reaction by one faced with serious criminal charges. The record is devoid of any evidence, either through petitioner's words and actions or through medical evidence, which shows that petitioner was unable to rationally understand the proceedings against him and assist counsel in his defense.  In these circumstances, the information before the trial judge did not raise a bona fide doubt regarding petitioner's competence, and thus petitioner's right to due process of law was not violated by the trial court's failure to *sua sponte* hold a hearing on his competence before accepting his plea.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.[2]

G.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver

---

[2]Petitioner's third claim for relief does not raise a substantive basis for relief, but contends that petitioner had good cause to excuse his procedural default.  The Court therefore need not address Claim III as an independent basis for habeas relief.

of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 9/25/09

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on September 25, 2009.

s/Eddrey Butts
Case Manager

20